**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

DEC 0 5 2025

**TAMMY H. DOWNS, CLERK**
By:_____
                    **DEP CLERK**

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

KRISTI MCINTOSH, Ed.D                                               PLAINTIFF

VS.                           CASE NO.   4:25-cv-1265-KGB

PULASKI COUNTY SPECIAL SCHOOL DISTRICT
A Public Body Corporate                                            DEFENDANT

<u>COMPLAINT</u>

<u>Introduction</u>

This is a civil rights action brought pursuant to Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C.S. § 1981 (as amended by the Civil Rights Act of 1991, which is codified at 28 U.S.C. § 1658), pursuant to 42 U.S.C. § 1983, pursuant to the Fourteenth Amendment to the United States Constitution, in order to recover damages against the defendant for the unlawful discriminatory employment practices that the plaintiff, Dr. Kristi McIntosh, has been subjected to on account of her race and sex.  This is also an action for declaratory judgment pursuant to 28 U.S.C. § 2201 to declare the rights and other legal relations between the parties.  The plaintiff is seeking equitable relief and injunctive relief as well.

I.
<u>Jurisdiction</u>

1.      Jurisdiction and venue of this Court are invoked pursuant to 28 U.S.C. §§ 1331, 1343, 1391, 42 U.S.C. §§ 2000e *et seq.* (Title VII of the Civil Rights Act of 1964, as amended), 42 U.S.C.S. § 1981, and 42 U.S.C.S. § 1983.  The Court is also asked to assume supplemental jurisdiction over the plaintiff's state law claims.

This case assigned to District Judge Parker
and to Magistrate Judge Harris

1

2.      The unlawful employment practices alleged to have been committed against the plaintiff were committed in the State of Arkansas, and in the County of Pulaski.

II.
Parties

3.      The plaintiff Dr. Kristi McIntosh is an African American female, and is a resident of the United States of America.

4.      The defendant Pulaski County School Special District is a public body corporate, pursuant to Ark. Code. Ann. § 6-13-102.

III.
Facts

5.      The plaintiff was employed by the Pulaski County Special School District (PCSSD) as the Assistant Principal for Joe T. Robinson High School.

6.      Joe T. Robinson is a high school that is located in Western Pulaski County on Hwy. 10, in an area that is majority Caucasian.

7.      On March 1, 2024, Dani Knight, the Attendance Clerk for Robinson High School received an email from a parent at approximately 8:30 a.m. advising that she was not allowing her child to attend school, because the day prior, her child was involved in an altercation with another student, where that student threaten to kill her son.[1]

8.      The parent stated that she spoke with her son, but he refused to name who the student was who made the threat, but she was able to get a description of the student.

9.      The parent's email was forwarded by Dani Knight to Jason Pickering, who was the principal at Robinson Hight School and to Kristi McIntosh.  This email was forwarded by Dani Knight at 8:31 a.m. on the morning of Friday, March 1, 2024.

---

[1] The email from the parent was sent at 7:36 a.m. to Dani Knight.

10.    Upon information and belief, Dani Knight is a Caucasian female, and Jason Pickering is a Caucasian male.

11.    When Dr. Pickering received the email that had been forwarded to him by Dani Knight, he called the parent (Monike Leshelle) to speak with her about the matter.

12.    Ms. Leshelle explained that her son was involved in an altercation with a student the day before, and that the student had threatened her son.

13.    Dr. Pickering asked Ms. Leshelle if her son was willing to give a statement to him but she stated he did not want to "snitch" and he really did not want his mother to inform the school about the matter.

14.    Ms. Leshelle was able to give a description of the young man who made the threat, and Dr. Pickering was able to deduce that it might be a particular student he had in mind.

15.    After the phone call with the parent, Dr. Pickering called Lead Officer Marwin Edwards, Officer Calvin Allen, who is believed to be the Resource Officer, and is employed by the Little Rock Police Department, and Dr. McIntosh to his officer to develop a plan of action.

16.    Dr. Pickering told Lead Officer Marwin Edwards to pick the young man up as soon as he hit the campus, and to bring the student to Dr. Pickering's office and search him for weapons, and to find out what happened the day before.

17.    At 9:00 a.m., Officer Edwards went to the special education room and spoke with Lisa Garrett, who is the Special Education Department Chair: Resource & Inclusion for Joe T. Robinson High School, asking her if she had seen the student in question.

18.    Ms. Garrett advised Officer Edwards that she had not seen the student, and advised Edwards that the student's father works at night, and gets off at 8:00 a.m., and normally does not bring the student to school until around 9:30 a.m..

3

19.     At 9:00 a.m., Dr. Pickering contacted Officer Aaron Hickman for the purpose of giving him a ride to the Center of Innovation (COI).

20.     The student in question usually arrives at school late (about 9:30 a.m.) because his father works at night.

21.     When the student arrived at school, there were no security officers to greet him to take him to Dr. McIntosh's office.

22.     The student was let out by his father, and went to his classroom

23.     While Officer Edwards was performing some other duties, at 9:43 a.m., Officer Hickman radioed him stating that he had the student in question in Room 27A/B and was taking the student to the security office.

24.     Officer Edwards went to the security office to retrieve the student, and explained to him that they were going to Principal Pickering's office.

25.     However, Officer Hickman advised that Pickering was off campus at the COI.

26.     Officer Edwards then contacted Dr. McIntosh via radio to let her know that the student was being brought to her office.

27.     Once Officer Hickman and the student arrived at Dr. McIntosh's office, a search was conducted, and the gun was found. Dr. McIntosh immediately contacted Dr. Pickering and Lead Officer Marwin Edwards was notified.

28.     At 9:51 a.m., Dr. McIntosh called Dr. Pickering to advise him that they found a handgun that had been made with a 3D Imaging printer on the student in question. Dr. McIntosh reported that the student was in her office with Officer Allen and a PCSSD security officer, and that they conducted a search and found a weapon on the student.

4

29.     At 9:53 a.m., Dr. Pickering then called Dr. Charles McNulty, the Superintendent of Schools for the PCSSD to advise him of the situation.

30.     The student in question is African American, and is a special education student, who is on an Individualized Educational Plan (IEP) due to his disability.

31.     Dr. McIntosh immediately started the expulsion paperwork on the student.

32.     Dr. McNulty came to the plaintiff's office and advised her that she did a great job, and since the matter was resolved swiftly, there was no need to place the school on lockdown.

33.     Dr. Pickering sent an email to the staff of Robinson, Dr. McNulty, and Jessica Duff on March 1, 2024 at 10:21 a.m. advising them of the situation stating that a parent had called stating that a threat was made against her child by another student. That he immediately alerted security, School Resource Officer (SRO), and Dr. McIntosh. "When the student in question came to school, he was immediately scanned by security. A weapon was found in the backpack of the suspect. He was detained by the LRPD."

34.     In that the student in question was on an IEP, Dr. McIntosh contacted the Special Education Coordinator to schedule a manifestation hearing to determine whether the child's conduct was the result of his disability. Such a hearing is required by federal and state law. This meeting took place on or about March 6, 2024.

35.     The IEP Team determined at the Manifestation Determination Meeting that "[t]here is a direct and substantial relationship between the child's disability and the act of misconduct under review."[2]

---

[2] Such a determination would prevent the student from being expelled.

36.     As word began to spread, and some staff began to spread negative information and, in some circumstances, false information about the student, pressure was placed on Dr. McNulty to take action to prevent the student from ever returning to Robinson High School.

37.     On April 3, 2024, Dr. McNulty took the unprecedent step of reversing the Manifestation Determination made by the student's IEP team. Dr. McNulty stated that the student's behavior "was not a manifestation of his disability, and therefore, can be recommended for expulsion.

38.     The student was expelled.

39.     The plaintiff was placed on administrative leave on March 12, 2024, which lasted until April 19, 2024. During this period, the plaintiff was not allowed on campus. Ten (10) days of administrative leave was without pay.

40.     On April 22, 2024, the plaintiff was advised that she was being demoted from her administrative duties as Assistant Principal to that of a classroom teacher.

41.     This demotion of the plaintiff to a classroom teacher resulted in approximately $20,000.00 in annual pay cut.

42.     Dr. Pickering was demoted to the position of Assistant Principal; however, his cut in pay (if any) was not drastic as Dr. McIntosh.

43.     Dr. Pickering was placed over adult education, and he may see 1 – 2 clients per day.

44.     Dr. McIntosh was certified in PreK – 6th grade. However, the defendant decided to place her in a 7th Grade English class. Dr. McIntosh was denied opportunities to be transferred to other positions as well as denied promotional opportunities.

45.    The defendant replaced Dr. Pickering with a Caucasian female by the name of Michelle Camp, as the principal at Joe T. Robinson High School.

46.    The defendant replaced the plaintiff with Frank Lightfoot, who is a Caucasian male, as the Assistant Principal at Joe T. Robinson High School.

47.    At the end of the 2024-2025 school year, the defendant terminated the plaintiff by failing to renew her contract.

IV.
Title VII – Race Discrimination

48.    The plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 47, supra., inclusive as though set forth herein word for word.

49.    The plaintiff was subjected to less favorable terms and conditions of her employment contract when the plaintiff than similarly situated white employees, who were treated more favorable on account of their race.

50.    Despite the fact that the plaintiff took all of the necessary precautions to prevent any harm to students, she was subjected to disciplinary actions that were much more severe than her white counterparts.

51.    Although Dr. Pickering was the principal in charge at Joe T. Robinson High School, and was disciplined, he was demoted to an Assistant Principal's role, while the plaintiff was taken completely out of administration, causing her reduction in pay to be harsher.

52.    On April 24, 2025, Principal Lightfoot discovered that a vehicle (2013 Chevy Silverado pickup) had its doors opened.

53.    In plain view, there were several liquor bottles and beer bottles inside the Silverado.

54.     The sheriff's department was called, and they later found out that the vehicle belong to a Caucasian student enrolled at the school.

55.     A search of the vehicle revealed a box of 9mm (ammunition), four loose rounds of 9 mm, a bottle of Jack Daniel's Tennessee Whiskey (750 ml), four Vuse 5.0 menthol vape cartridges, fourteen (14) 12-gauge shotgun rounds, a container containing .22 caliber rounds, a .32 caliber black Charter Arms revolver with three (3) rounds loaded. The also found a machete inside the vehicle as well.

56.     The student was placed under arrest and taken to the Pulaski County Regional Detention Facility and charged with possession of firearms on school property.

57.     On May 17, 2024 a Caucasian high school student at Joe T. Robinson High School got involved in an altercation with another student.

58.     Staff had to separate the students who were fighting.

59.     Assistant Principal Lightfoot had other staff broke up the fight, and he took ahold of the aggressor and was leading him to the principal's office. However, the student ignored Mr. Lightfoot and walked out to his vehicle.

60.     This student threw an ASP baton into the back of his vehicle.

61.     A search of this student's vehicle yielded the ASP baton and a knife.

62.     The student was taken to Assistant Lightfoot's office, and was left unattended. The student left Lightfoot's office and apparently left the campus. This student was gone for approximately 1.5 hours.

63.     Due to the incident that took place on May 17, 2025, neither the principal nor the assistant principal experienced any disciplinary actions.

64.     Unlike the plaintiff's situation, parents were not notified, the news media was not notified, nor were the police called, neither were the administrators placed on administrative leave.

65.     There have been other incidents involving white male employees, such as a coach was inside the locker room, and allowing students to vape and use profanity, and the coach was using profanity, and attempted to physically assault another student.

66.     The plaintiff was subjected to disparate treatment on account of her race in violation of Title VII of the Civil Rights Act of 1964 (as amended) and in violation of 42 U.S.C.S. § 1981 (as amended by the Civil Rights Act of 1991, which is codified at 28 U.S.C.S. § 1658).

V.
Title VII – Sex Discrimination

67.     The plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 66, supra., inclusive as though set forth herein word for word.

68.     The plaintiff was subjected to less favorable terms and conditions of her employment contract when the plaintiff than similarly situated male employees, who were treated more favorable on account of their sex.

69.     Dr. Pickering gave a directive to Lead Officer Marwin Edwards to immediately take custody of the student when he arrived on campus, but Edwards did not do that.  The student was allowed to enter into the school, and eventually got to a class.

70.     Despite Edwards failure to follow Pickering directive, he was not disciplined.

71.     Also, Dr. Pickering left campus to go to the COI, knowing that a potentially dangerous situation was on hand, yet he was not disciplined in a like manner as the plaintiff.

72.     The Resource Officer – Calvin Allen was not disciplined at all, despite not getting the student when he arrived on campus.

9

73.    The plaintiff was disciplined the harsher than her male counterparts, despite being the least culpable of all parties involved.

74.    The plaintiff was subjected to disparate treatment on account of her sex in violation of Title VII of the Civil Rights Act of 1964 (as amended).

## VI.
## Procedural Requirement

75.    The plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 74, supra., inclusive as though set forth herein word for word.

76.    The plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), contending that she had been discriminated against in terms and conditions of her employment with the defendant, due to her race and sex.

77.    In response to the Plaintiff's Charge of Discrimination that he filed with the EEOC, said agency issued her a "Determination and Notice of Rights" letter dated September 8, 2025, which *inter alia* gave the plaintiff the right to sue the defendant within 90 days from the date she received the above-mentioned letter. (**A copy of said "Notice of Right to Sue" letter is attached to this complaint and is identified as Plaintiff's Exhibit "A"**).

78.    This cause of action is being brought within ninety (90) days of the plaintiff receiving her right-to-sue letter as referenced in paragraph 76 of this complaint.

79.    Due to the above-mentioned acts of discrimination, the plaintiff has suffered mental anguish, embarrassment, lost wages, all in a manner to be proven at trial.

80.    Furthermore, the defendant's acts of discriminating against the plaintiff due to her race and sex were done willfully, entitling the plaintiff to an award of punitive damages.

## JURY DEMAND

81.     The plaintiff requests that this matter be tried before a fair and impartial jury of

twelve (12) persons.

THEREFORE, the plaintiff is seeking the following relief for the above-described unlawful

employment practices:

a.     declare that the plaintiff has been subjected to unlawful discriminatory practices;

b.     back pay;

c.     compensatory and punitive damages;

d.     the cost of prosecuting this action;

e.     attorney's fees;

f.     and for all other just, equitable, and legal relief.

Respectfully submitted,

PORTER LAW FIRM
The Catlett-Prien Tower Building
323 Center Street, Suite 1035
Little Rock, Arkansas 72201
Telephone: 501-244-8200
Facsimile: 501-372-5567
Email: Aporte5640@aol.com

By: _____
Austin Porter Jr., No. 86145

Dated this 5th day of December 2025.

11



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Little Rock Area Office**
820 Louisiana St, Suite 200
Little Rock, AR 72201
(501) 900-6130
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 09/08/2025

To: Dr. Kristi R. McIntosh
1815 Pleasant Pointe Cir
Bryant, AR 72022

Re: EEOC Charge No: 493-2024-02982

EEOC Representative and email:    Joslyn Burchett
Investigator
joslyn.burchett@eeoc.gov

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 493-2024-02982.

On behalf of the Commission,

Digitally Signed By:William A Cash
09/08/2025
William A Cash
Area Office Director

**CC: PULASKI COUNTY SPECIAL SCHOOL DISTRICT**



Bequette Billingsley & Kees P.A.
Attn: Jay Bequette
425 W Capitol Ave Ste 3200
Little Rock, AR 72201

PCSSD
Attn: Jeff Senn
925 E. Dixon Rd.
Little Rock, AR 72206

Pulaski County Special School District
Attn: Susan Alford
925 E Dixon Rd
Little Rock, AR 72206

Please retain this Notice for your records.